UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BROOKS & DERENSIS, P.C., <br><br> Plaintiff <br><br> v. <br><br> TWIN CITIES FIRE INSURANCE CO., <br><br> Defendant. | Case No. 22-cv-11980-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                           September 19, 2023

### I.  Introduction

Plaintiff Brooks & DeRensis ("B&D") has filed this lawsuit against Defendant Twin Cities Fire Insurance Co. ("Twin Cities") alleging breach of contract (Count I), violation of Mass. Gen. L. c. 93A (Count II) and seeking a declaration of B&D's right to indemnity from Twin Cities under an insurance policy (the "Policy") (Count III).  D. 1.  Twin Cities now moves to dismiss for failure to state a claim, arguing that B&D's loss is not covered under the Policy.  D. 8.  For the reasons stated below, the Court ALLOWS the motion.

### II.  Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must

perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

**III.    Factual Background**

The following factual allegations in B&D's complaint, D. 1, are accepted as true for consideration of the motion to dismiss.

**A.    The Loss**

B&D is law firm in Boston, Massachusetts.  D. 1 ¶ 1.  In 2021, B&D was retained by an individual who called himself Brian Rodriguez ("Rodriguez") to secure money owed to Rodriguez by his employer under the terms of a severance agreement.  Id. ¶ 7.  Rodriguez then emailed the employer seeking payment of the amount owed to him to be sent to B&D within a week.  Id. ¶ 8.  Shortly thereafter, B&D received a cashier's check drawn upon Wells Fargo Bank, N.A. in the amount of $89,960 with a letter from the employer's chief financial officer explaining the reason for payment.  Id.  On October 28, 2021, B&D deposited the cashier's check into its IOLTA account at Cambridge Trust Bank.  Id. ¶ 9.  On November 3, 2021, B&D transferred $88,385 to an account at Citibank NY, USA at Rodriguez's instruction.  Id. ¶ 10.  The following day, B&D received a letter from Wells Fargo Bank N.A. dishonoring the cashier's check as an "Altered/Fictitious Item." Id. ¶ 11.

B.     **The Policy**

B&D purchased the Policy from Twin Cities for the term beginning April 1, 2021 and ending April 30, 2022.  Id. ¶ 5.  The Policy covers various business-related losses that B&D might incur and consists of numerous documents, including the Special Property Coverage Form, the Super Stretch for Law Offices Endorsement, the Forgery Coverage Endorsement, Special Property Coverage Amendatory Endorsement.  Id. ¶ 20.

Each of the listed endorsements expands coverage under the Special Property Coverage Form for losses relating to forgeries or counterfeits:

1) The Super Stretch for Law Offices Endorsement ("Super Stretch Endorsement") provides "up to $25,000 in any one occurrence as a Limit of Insurance to cover loss from forgery of covered instruments, money orders, credit cards, and counterfeit money."  Id. at 29, 31.  This coverage "is subject to the provisions of Forgery Coverage."  Id. at 31.

2) The Forgery Coverage Form modifies the Additional Coverages in the Special Property Coverage Form to provide "Forged or Altered Instruments Coverage" ("FAIC") and "Counterfeit Currency and Money Orders Coverage" ("CCMOC").  Id. at 27–28.

3) The Special Property Coverage Amendatory Endorsement ("Amendatory Endorsement") replaces language relating to coverage for "Forgery" in Section A.5.f of the Special Property Coverage Form.  Id. at 136.

The endorsements also modify the scope of the Policy's exclusions:

1) The Forgery Coverage Form contains exclusions specific to the FAIC and the CCMOC. Id. at 27–28.

2) The Amendatory Endorsement replaces language relating to exclusions for "Forgery" and other losses in Section B.2 of the Special Property Coverage Form.  Id. at 137–38.

**IV.     Procedural History**

B&D filed this lawsuit on November 21, 2022.  D. 1.  Twin Cities has now moved to dismiss under Rule 12(b)(6).  D. 8.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 21.

**V.      Discussion**

> **A.      Claims for Breach of Contract and Declaratory Judgment (Counts I and III)**
>
>> *1.      Coverage Under the Policy*

The interpretation of an insurance policy is a question of law for the court.  See Ruggerio Ambulance Serv. v. Nat'l Grange Mut. Ins. Co., 430 Mass. 794, 797 (2000).  Under Massachusetts law, "the insured bears the initial burden of showing that the case involves a generally covered risk under the policy."  Easthampton Congregational Church v. Church Mut. Ins. Co., 916 F.3d 86, 91 (1st Cir. 2019) (quoting Stor/Gard, Inc. v. Strathmore Ins. Co., 717 F.3d 242, 247 (1st Cir. 2013)).  The burden then "shifts such that the insurer must demonstrate that an exclusion precludes coverage."  Id. (citation omitted).  Once the insurer does so, "the burden shifts back to the insured[] to show an exception to the exclusion holds sway."  Id. at 92 (quoting Stor/Gard, Inc., 717 F.3d at 247).

The court "construe[s] an insurance policy under the general rules of contract interpretation, beginning with the actual language of the polic[y], given its plain and ordinary meaning."  Id. (quoting AIG Prop. Cas. Co. v. Cosby, 892 F.3d 25, 27 (1st Cir. 2018)).  While "ambiguous words or provisions are to be resolved against the insurer," City Fuel Corp. v. Nat'l Fire Ins. Co. of Hartford, 446 Mass. 638, 640 (2006), "provisions [that] are plainly and definitely expressed in appropriate language must be enforced in accordance with [the policy's] terms," High Voltage Eng'g Corp. v. Fed. Ins. Co., 981 F.2d 596, 600 (1st Cir. 1992) (quoting Stankus v. N.Y. Life Ins. Co., 312 Mass. 366, 369 (1942)).

4

a) <u>Forgery Coverage Under the Amendatory Endorsement</u>

As an initial matter, the Court notes that B&D appears to concede that the Amendatory Endorsement's additional coverage for Forgery does not apply to this case. D. 1 at 136 (covering "loss resulting directly from forgery or alteration of any check . . . that you or your agent has issued, or that was issued by someone who impersonates you or your agent"). Twin Cities argues that the dishonored cashier's check was not issued by B&D, B&D's agent, or someone pretending to be B&D or its agent and thus was not covered by the language in the Amendatory Endorsement. D. 9 at 8-9. B&D does not address this argument or cite to the Amendatory Endorsement's Forgery in its opposition. <u>See generally</u> D. 15. Nor does B&D excerpt any language from the Amendatory Endorsement in the text of its complaint or reference it as grounds for coverage in its correspondence with Twin Cities. <u>See</u> D. 1 ¶ 20; <u>id.</u> at 170–77. B&D has not met its burden to establish coverage on this ground.[1]

b) <u>Forgery Coverage Under the Super Stretch Endorsement</u>

B&D instead asserts that Super Stretch Endorsement, D. 1 at 29, provides coverage for "forgery of covered instruments." D. 15 at 6. A plain reading shows that this endorsement only enlarges the insurance limit for forgery-related losses. D. 1 at 31 (stating that $25,000 limit of insurance "is in addition to any other Limit of Insurance that may be provided by this policy for this coverage"); <u>see</u> D. 15 at 8 (acknowledging the same). The Super Stretch Endorsement indicates that the scope of the forgery coverage "is subject to the provisions of Forgery Coverage, Form SS 04 86." D. 1 at 136. As noted above, the Forgery Coverage Form adds two types of

---

[1] B&D also does not challenge Twin Cities' arguments that the cashier's check was not "Covered Property" that suffered damage at the "scheduled premises" within the meaning of § A.1 of the Special Property Coverage Form. D. 9 at 5–6; <u>see</u> D. 1 at 83.

coverage to the Special Property Coverage Form.  The Court addresses each of these additional coverages below.

            c)        FAIC Under the Forgery Coverage Form

The FAIC provides coverage for "forgery or alteration" of

> a. Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in 'money' that are:
> (1) Made or drawn by or drawn upon you;
> (2) Made or drawn by one acting as your agent;
> or that are purported to have been so made or drawn.

D. 1 at 27.  B&D appears to assert the cashier's check is a "forgery" within the meaning of the FAIC.  See D. 15 at 7 (citing this section).  Twin Cities argues that the cashier's check at issue was "neither 'made or drawn by [the Plaintiff]' nor 'drawn upon [the Plaintiff].'"  D. 9 at 10–11.

"A check is a 'draft signed by the maker or drawer, drawn on a bank, payable on demand, and unlimited in negotiability.'"  CustomMade Ventures Corp. v. Sentinel Ins. Co., No. 11-10365-DPW, 2012 WL 4321060, at *5 (D. Mass. Sept. 17, 2012) (quoting Black's Law Dictionary 269 (9th ed. 2009)). Taking the factual allegations in the complaint as true, B&D received a forged cashier's check from a third-party purporting to be Rodriguez's employer.  D. 1 at ¶ 8.  As a cashier's check, it was purportedly made or drawn by and drawn upon Wells Fargo, N.A.  Louis Falcigno Enters., Inc. v. Mass. Bank & Tr. Co., 14 Mass. App. Ct. 92, 94 (1982).  B&D was the payee or the bearer in this circumstance, not the maker, drawer or drawee.  CustomMade, 2012 WL 4321060, at *5 (defining "draft" as instrument that "direct[s] another person (the drawee or payor) to pay a certain sum of money on demand or at a definite time to a third person (the payee) or to bearer" (quoting Black's Law Dictionary 566 (9th ed. 2009)).  Accordingly, B&D has not established that the plain language of the FAIC applies here.

>   d) CCMOC Under the Forgery Coverage Form

B&D also draws the Court's attention to the definitions of "money" and "counterfeit" in the Special Property Coverage Form. D. 15 at 8–9; see D. 1 ¶ 20. The Court takes this to suggest that B&D believes its loss falls within the Counterfeit Currency and Money Orders Coverage listed in the Forgery Coverage Form. See D. 1 ¶ 20. Covered Property under this clause includes:

> a. Money orders, including counterfeit money orders, of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation; and
> b. Counterfeit United States or Canadian paper currency.

D. 1 at 28. Twin Cities argues that the Counterfeit Currency and Money Orders Coverage only refers to "money orders" and "paper currency" and does not cover cashier's checks.

A money order is a "negotiable draft issued by an authorized entity (such as a bank, telegraph company, post office, etc.) to a purchaser, in lieu of a check, to be used to pay a debt or otherwise transmit funds on the credit of the issuer." Soto-Santiago v. Corporacion del Fondo del Seguro del Estado, No. 15-cv-02647, 2020 WL 3884836, at *6 (D.P.R. May 13, 2020) (quoting Black's Law Dictionary at 1159 (10th ed. 2014)) (interpreting District of Puerto Rico local rule regarding acceptable forms of payment). A handful of courts have found that money orders should be treated like cashier's checks in various contexts, because both are instruments which cannot be subsequently cancelled by the purchaser and must be honored by the bank or issuer if duly presented. See, e.g., United States v. First Nat. Bank of Bos., 263 F. Supp. 298, 302 (D. Mass. 1967) (holding that bank need not repay amounts received for stolen postal money orders it presented to U.S. government in good faith, because bona fide purchaser should get "protection comparable to that of a holder in due courts of a traveler's check, or a bank check, or an ordinary negotiable instrument"); First State Bank of Monticello v. Ohio Cas. Ins. Co., No. 04-2089, 2005 WL 8161174, at *1 n.2, 2 (C.D. Ill. Sept. 26, 2005) (concluding that bank's insurance policy,

covered "[l]oss of Property resulting directly from . . . false pretenses," covered bank's acceptance of bad checks in exchange for money orders and noting that "[b]ank money orders are like cashier's checks" as "once issued, it cannot be canceled or withdrawn), aff'd, 555 F.3d 564 (7th Cir. 2009); Cross v. Exch. Bank Co., 168 N.E.2d 910, 912 (Ohio. App. Ct. 1958) (holding that purchaser of bank money order cannot subsequently prevent payment to payee or endorsee because bank money order functions like cashier's check).

On the other hand, courts that have confronted the issue of whether an insurance policy provision referring to "money orders" also covers cashier's checks have construed such policy language to exclude cashier's checks. Harrah's Ent., Inc. v. Ace Am. Ins. Co., 100 F. App'x 387, 391–93 (6th Cir. 2004) (concluding that policy covering "[1] post office or [2] express money orders" does not cover cashier's checks (alternations in original)); Owens, Schine & Nicola, P.C. v. Travelers Cas. & Sur. Co. of Am., No. CV095024601, 2010 WL 4226958, at *8–9 (Conn. Super. Ct. Sept. 20, 2010), vacated by stipulation of parties, No. FBT-CV-09-5024601, 2012 WL 12246940 (Conn. Super. Ct. 2012) (holding that exclusion for losses resulting from "acceptance of money orders or counterfeit money" did not apply to insured's acceptance of fraudulent "Official Check" issued by Wachovia Bank); Computer Works, Inc. v. CNA Ins. Companies, 757 P.2d 167, 168 (Colo. App. 1988) (holding that cashier's check did not fall within exception to exclusion for acceptance "any *post office or express money order*") (emphasis in original). The Court notes that Harrah's and Computer Works examined policy language specific to post office or express company money orders, whereas B&D's policy explicitly includes coverage for "[m]oney orders, including counterfeit money orders, of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation." Compare Harrah's, 100 F. App'x at 391, and Computer Works, 757 P.2d at 168,

8

with D. 1 at 28.  Indeed, the Sixth Circuit in Harrah's acknowledged that a bank, rather than post office or express company, money order might well include a cashier's check.  Harrah's, 100 F. App'x at 392.

B&D appears to have some support for its position that "money order" in the CCMOC is ambiguous, because it may reasonably be interpreted as either including or excluding cashier's checks.  Id. at 392 (ruling that "at a minimum ambiguity clouds the meaning of" the phrase "postal or express money order" and construing ambiguous provision against drafter of policy under Tennessee law); Owens, 2010 WL 4226958, at *9 (concluding that phrase "money order" in exclusion was ambiguous and resolving ambiguity in favor of insured under Connecticut law).  Under Massachusetts law, the Court would resolve any ambiguity in favor of the insured, B&D. City Fuel, 446 Mass. at 640.  For present purposes, the Court assumes, without deciding, that the fraudulent cashier's check is covered by the CCMOC.

2. *False Pretenses Exclusion Under the Amendatory Endorsement*

Even assuming such coverage *arguendo*, B&D's loss is excluded by Section B.3.f of the Amendatory Endorsement (the "False Pretenses Exclusion").  D. 9 at 6–8, 13.  In pertinent part, the Amendatory Endorsement states that:

> [Twin Cities] will not pay for loss or damage caused by or resulting from: . . .
> **False Pretense:**  Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

D. 1 at 138.  This exclusion addresses a scenario where the insured willingly transfers funds to a third-party based on some false representation or receipt of a false check.  Schmidt v. Travelers Indem. Co. of Am., 101 F. Supp. 3d 768, 778–79 (S.D. Ohio 2015) (holding that similar language excluded loss of funds that law firm transferred to purported client after receipt of forged cashier's check); Martin, Shudt, Wallace, DiLorenzo & Johnson v. Travelers Indem. Co. of Conn., No. 1:13-

9

CV-0498 LEK/CFH, 2014 WL 460045, at *3 (N.D.N.Y. Feb. 5, 2014) (holding that similar language unambiguously excluded loss of funds that business transferred to purported client after receipt of forged check). B&D's loss falls into this exclusion.[2]

B&D's rebuttal focuses on language from Section B.2 of the Special Property Coverage Form, which provides that Twin Cities "will not pay for *physical* loss or *physical* damage caused by or resulting from" various causes including the same False Pretenses Exclusion included in the Amendatory Endorsement. D. 1 at 99 (emphasis added). B&D argues that the word "physical" indicates that the exclusions listed in Section B.2 apply only to losses of tangible property and that funds in an IOLTA account are not tangible property. D. 15 at 9–15. The language limiting the exclusions to "physical loss or physical damage" is superseded, however, by the language in the Amendatory Endorsement. D. 1 at 137 (stating that "Paragraph 2 is deleted and replaced with the following: We will not pay for loss or damage caused by or resulting from: . . . "); D. 20 at 2-3. In such a circumstance, the superseding language unambiguously controls. See Jet Line Servs., Inc. v. Am. Emps. Ins. Co., 404 Mass. 706, 712 (1989) (finding no ambiguity where "basic policy language" was "superseded by the endorsement"). The False Pretenses Exclusion thus contains no limitation to physical loss or physical damage.

Twin Cities asserts that the False Pretenses Exclusion applies across the board to any coverage granted by Special Property Coverage Form, including the CCMOC. D. 9 at 7–8, 13. The Court notes that other jurisdictions have found ambiguity where an exclusion contained in one

---

[2] At oral argument, B&D's counsel contended that B&D's transfer of funds from an IOLTA to a purported client was not voluntary, because law firms are ethically obligated to make such transfers whenever requested by a client. B&D had not raised or developed this argument in its briefing and as such the Court need not consider it. At any rate, this argument does not warrant a different outcome here in light of case law holding that law firm transfers from client escrow or IOLTA accounts under similar circumstances are voluntary partings. Martin, 2014 WL 460045, at *3–4; Schmidt, 101 F. Supp. 3d at 777–79.

endorsement conflicts with coverage provided by another endorsement. Morris James LLP v. Cont'l Cas. Co., 928 F. Supp. 2d 816, 824–26 (D. Del. 2013) (concluding that false pretense exclusion conflicted with forgery and alteration endorsement and holding that insured's loss was not excluded in light of ambiguity); Cent. Mut. Ins. Co. v. Reliance Prop. Mgmt., Inc., No. 05-21-00071-CV, 2022 WL 1657031, at *6 (Tex. App. May 25, 2022) (ruling that voluntary parting exclusion "cannot be reconciled" with "endorsement's express coverage of loss for fraud-based crimes"). Here, however, there is no irreconcilable conflict between the False Pretenses Exclusion and any provision granting coverage.[3] Accordingly, the Court concludes that B&D's loss is excluded under the False Pretenses Exclusion.

Even assuming that B&D established coverage the CCMOC, its loss is unambiguously excluded by the False Pretenses Exclusion. Accepting all factual allegations as true and drawing all permissible inferences in B&D's favor, the Court concludes that B&D has not plausibly alleged a claim for breach of the Policy or a right to indemnity under the Policy. Accordingly, Counts I (breach of contract) and III (declaratory judgment for right to indemnity under the Policy) are dismissed.

### B. Unfair and Deceptive Practices in Violation of Chapter 93A (Count II)

Because Twin Cities properly denied coverage under the Policy, B&D's claim violations of Chapter 93A also fails. "When coverage has been correctly denied, as in this case, no violation

---

[3] Moreover, Twin Cities argues that B&D's claim is excluded by language specific to the CCMOC. D. 9 at 12–13. Section B.3.c of the CCMOC states that Twin Cities "will not pay for loss resulting from [B&D's], or anyone acting on [B&D's] express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property." D. 1 at 28. Although the Court need not reach this analysis because it has already concluded that coverage is excluded under the False Pretenses Exclusion, it appears that this exclusion would also bar coverage. Midlothian Enterprises, Inc. v. Owners Ins. Co., 439 F. Supp. 3d 737, 742-43 (E.D. Va. 2020) (holding that same language excluded loss where insured transferred money into hacker's bank account after receipt of phishing email requesting such transfer).

11

of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found." Styller v. National Fire & Marine Ins. Co., 95 Mass. App. Ct. 538, 546 (2019) (quoting Transamerica Ins. Co. v. KMS Patriots, 52 Mass. App. Ct. 189, 197 (2001)); see Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins. Co., No. CV 14-13649-JCB, 2015 WL 13234578, at *10 (D. Mass. Sept. 22, 2015). As concluded above, Twin Cities properly denied coverage to B&D under the Policy. Accordingly, B&D's claim for violation of Chapter 93A, Count II, is also dismissed.

**VI.  Conclusion**

For the foregoing reasons, the Court ALLOWS Twin Cities' motion to dismiss, D. 8.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge